IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02573-MSK-MJW

DAVID ELLIS,

     Applicant,

vs.

AL ESTEP, Warden, Fremont Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO, JOHN W. SUTHERS,

     Respondents.

─────────────────────────────────────────────────────────────

OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
─────────────────────────────────────────────────────────────

     This matter comes before the Court on the Petitioner's Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 3) and the Petition to Correct the Record

(#25), which the Court deems to be a supplement to the Application.[1]  The Respondents

filed an Answer (# 12).  The Petitioner filed a traverse (# 23).  Having considered the same,

along with the state court trial record, the Court

     **FINDS** and **CONCLUDES** that:

**I.  Jurisdiction**

     The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 2254 and

1331.

───────────────────────

[1]Because the Petitioner appears pro se, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate. *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991).

## II. Background

Petitioner David Ellis was charged in state court with two counts of attempted first degree extreme indifference murder, one count of first degree assault, and one count of crime of violence during the commission of attempted first degree murder and first degree assault.[2]

The charges arose from a shooting that occurred on December 24, 1997, at a party attended by Petitioner at his girlfriend's home in Denver. During an argument between Petitioner and his girlfriend, one of the girlfriend's brothers intervened and told the Petitioner to leave the party. As Petitioner walked downstairs and toward the front door, the girlfriend's other brother also told Petitioner that he was not welcome there. Petitioner testified that both men pushed him out the door, that someone hit him on the back of the head and that he heard a "bang." As Petitioner walked out of the house and the front doors closed behind him, he turned and fired three shots into the doors. The bullets went through the doors and struck one of the brothers in the shoulder and abdomen.

The injured brother recovered and was named as the victim in one count of attempted first degree extreme indifference murder and in the first degree assault count. The other brother was not struck, but was considered a victim for purposes of the second charge of attempt to commit first degree extreme indifference murder. After a jury trial in September 1998, the jury found Petitioner guilty of the crimes charged. The jury also made a finding regarding the crime of violence count. At sentencing, the first degree assault conviction was merged into one of the attempted first degree murder convictions because

---

[2]This general introductory background is taken from the statement of the case and statement of the facts in the Petitioner's opening brief on direct appeal. Answer, Appendix C, at 2-5.

both offenses involved a single victim. The trial court sentenced Petitioner to consecutive terms of imprisonment on the attempted first degree murder convictions, for a total term of thirty-six years.

The state appellate court affirmed Petitioner's convictions on direct appeal. *See People v. Ellis*, 30 P.3d 774 (Colo. App. 2001) Answer at Appendix F. Petitioner filed a petition for writ of certiorari with the Colorado Supreme Court, which was denied on September 17, 2001.

Petitioner then filed a motion for post-conviction relief under Colo. Crim. P. Rule 35(c), which was denied by the trial court on procedural grounds, without a hearing, on May 11, 2005. The state appellate court affirmed the denial of post-conviction relief on the merits. *See People v. Ellis*, Case No. 05CA1310 (Colo. App. July 19, 2007) (unpublished decision), Answer at Appendix M. Petitioner filed a petition for writ of certiorari with the Colorado Supreme Court, which was denied on October 29, 2007. The mandate issued on November 2, 2007.

Petitioner commenced this action on December 11, 2007, alleging that: (1) his right to due process was violated because the evidence was not sufficient to sustain the two convictions for attempted first degree extreme indifference murder; (2) the trial court's instructions to the jury regarding the applicability of self-defense were misleading and deprived him of due process; (3) his right to due process was violated when the trial court sentenced him for two crimes of violence, when the jury made a finding as to only one crime of violence count; (4) the prosecution's failure to secure and produce material evidence to the defense, and the trial court's refusal to order that the defense be granted access to such evidence, deprived him of due process; (5) his conviction for attempted

3

extreme indifference murder based on a multiplicitous information violated due process; (6) the trial court's failure to declare a mistrial after a witness testified that Petitioner may have shot someone on a prior occasion deprived him of due process; (7) the trial court's admission of other bad acts evidence violated due process; (8) his trial counsel was constitutionally ineffective in: (a) failing to ask the trial court to question all the jurors about whether they had discussed the case prior to deliberations, after one juror was excused for potentially engaging in such misconduct; and, (b) failing to issue a subpoena for the door which contained the bullet holes; and, (9) his sentence based on one attempted extreme indifference murder conviction violated his right to equal protection of the laws because the same conduct against a single victim was subject to a lesser penalty under the first degree assault conviction.

### III.  Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C.   § 2254 .... [it] does not review a judgment, but the lawfulness of the petitioner's custody simpliciter." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).

Because the Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a district court

may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is

implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [ (10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and the Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable ... [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* Likewise, the Court applies the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

## IV. Analysis

### A. Procedural Bar

As a preliminary matter, Respondents assert that the Petitioner failed to exhaust his sixth and seventh claims in the state appellate courts, and therefore, these claims are now procedurally barred. Answer at 7-11.

Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the petitioner's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir.1994). A claim has been exhausted when it has been "fairly presented" to the state court. *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Dever*, 36 F.3d at 1534. Reference to broad federal rights such as due process, without also alerting the state courts to the particular analysis developed by the Supreme Court for a specific violation, is not fair presentation of a federal constitutional question. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996). That is, a petitioner has not presented a constitutional claim to the state courts merely because "all the facts necessary to support the federal claim" were before the state courts, or because a "somewhat similar" claim was brought in the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Instead, a petitioner must have raised a "virtually identical" claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) (finding that "mere similarity" of claims is insufficient to exhaust). The presentment

8

requirement is satisfied if the substance of a federal habeas claim is presented to the state courts. *Picard*, 404 U.S. at 278; *Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir.1992).

With the foregoing legal principles in mind, the Court addresses below Respondents' contention that Petitioner failed to exhaust state court remedies for his sixth and seventh claims.

## 1. Claim Six

Petitioner asserts in claim six that his due process right to a fair trial was violated when the trial court failed to declare a mistrial after a witness testified that Petitioner "may have shot a brother before." Petition, attachment at 6. Respondents contend that Petitioner failed to present this claim to the state courts as a question of federal constitutional law because he relied exclusively on state law. Answer at 8-9. On direct appeal, Petitioner argued that the trial court should have declared a mistrial because the court's instruction to the jury to disregard the testimony was not sufficient to cure the prejudice to Petitioner. Answer at Appendix C, at 7-8. Petitioner relied on Colorado law in support of his argument, but maintained that his "right to a fair trial" should "take precedence over the quick disposal of criminal cases." *Id.* at 8.

It is a close question whether Petitioner has satisfied the exhaustion requirement for his sixth claim. The Colorado Court of Appeals analyzed Petitioner's claim under state law, in terms of the prejudice to the Petitioner. *People v. Ellis*, 30 P.3d at 777-78. The appellate court determined that the trial court's instruction to disregard the objectionable

9

testimony was sufficient to cure any prejudice to the Petitioner in light of the overwhelming evidence of the Petitioner's guilt. *Id.* at 778. This Court conducts a similar inquiry in determining whether a federal due process violation has occurred – whether the admission of the objectionable evidence rendered the Petitioner's trial fundamentally unfair, despite the trial court's curative instruction. *See Estelle*, 502 U.S. at 75; *Smallwood v. Gibson*, 191 F.3d 1257, 1277 (10th Cir. 1999).

The Court finds that the substance of the federal claim was presented to and decided by the state appellate court because the prejudice inquiry under state law and the fundamental unfairness inquiry under federal due process law are virtually identical. In addition, Petitioner invoked his right "to a fair trial" in presenting his claim to the appellate court. Thus, although the issue is a close one under *Duncan*, the Court finds and concludes that claim six was exhausted. Because Petitioner raised the claim in his petition for certiorari review to the Colorado Supreme Court, the Court need not address the applicability of Colorado Rule of Appellate Procedure 51.1 and instead analyzes the merits of Petitioner's claim, as set forth below.

## 2. Claim Seven

Petitioner asserts in claim seven that his constitutional right to a fair trial was violated when the trial court admitted prejudicial evidence of Petitioner's other bad acts. Petition, attachment at 6. Respondents contend that Petitioner failed to present this claim to the state courts as a question of federal constitutional law because he did not label his claim as federal, or cite cases construing federal constitutional law. Answer at 9. In his post-conviction appeal, Petitioner argued that he was denied his "constitutional right to a fair trial" by the prejudicial introduction of the other bad acts evidence. Answer, Appendix

J at 12.  Although Petitioner relied on Colorado law in support of his argument, the Colorado Court of Appeals resolved Petitioner's claim under the standard set forth in *Chapman v. California*, 386 U.S. 18, 26 (1967) for determining whether a constitutional error at trial may be deemed harmless, or requires reversal, consistent with the federal Constitution.

The Court finds that claim seven is exhausted.  Petitioner presented his claim to the state appellate courts as the denial of his constitutional right to a fair trial, and the Colorado Court of Appeals resolved the claim on federal constitutional grounds.  Because Petitioner raised the claim in his petition for certiorari review to the Colorado Supreme Court, the Court need not address the applicability of Colorado Rule of Appellate Procedure 51.1 and instead analyzes the merits of Petitioner's claim, as set forth below.

**B.  The Merits of the Petitioner's Claims**

**1.  Claim One**

Petitioner asserts in his first claim that his right to due process was violated because the evidence at trial was not sufficient to sustain the two convictions for attempted first degree extreme indifference murder.   Petition, attachment at 3.  Specifically, Petitioner contends that the "universal malice" element of first degree extreme indifference murder was not met because his conduct was directed specifically at the two individuals who were named as the victims in the amended information.

Under the Colorado Criminal Code, a person commits the crime of murder in the first degree if:

> Under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, he knowingly

engages in conduct which creates a grave risk of death to a person, or persons, other than himself, and thereby causes the death of another;

COLO.REV.STAT. (C.R.S.) § 18-3-102(1)(d) (2000).   A person commits criminal attempt if, "acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." C.R.S. § 18-2-101 (2000).

The Colorado Court of Appeals analyzed Petitioner's claim as follows:

Here, although defendant knew both the injured and uninjured victims were directly behind the doors, at the time the bullets were fired, the doors were closed. The act of shooting through the doors was directed towards the house, which he knew was full of adults and children.

In spite of the fact that defendant may have been angry with the two victims, his shots could have killed any person who happened to be behind the doors or in the general vicinity. *See People v. Moore*, 902 P.2d 366 (Colo. App. 1994) (although defendant's animus was first directed toward certain persons, defendant was properly convicted of extreme indifference murder when he attacked the next person to happen by); *People v. Fernandez*, 883 P.2d 491 (Colo. App. 1994) (despite defendant's testimony that he just shot at a specific person, universal malice finding was sustainable where other evidence placed persons other than the victim in or near the doorway at which the defendant shot).

Significantly, when defendant's attorney asked him if he was "directing [his] fire at any particular individual," defendant replied, "No, I wasn't."

Accordingly, ample evidence existed to establish that the defendant displayed the requisite universal malice and that he knowingly engaged in conduct creating a grave risk of death to others.

*People v. Ellis*, 30 P.3d at 778-79.

Petitioner's constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Id.* at 319 (emphasis in the original). The Court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence. *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998). The Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

It remains an open question in this Circuit whether a habeas petitioner's challenge to the sufficiency of the evidence is a question of fact or a question of law, and therefore whether 28 U.S.C. § 2254(d)(1) or § 2254(d)(2) should apply. *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006). The Court finds that Petitioner's claim fails under either standard.

In analyzing whether the *Jackson* sufficiency standard has been met, the Court considers Colorado substantive law to determine the element of "universal malice." *Hamilton*, 436 F.3d at 1194. The Colorado Supreme Court has defined "universal malice" as "that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim." *People v. Jefferson*, 748 P.2d 1223, 1228 (Colo. 1988) (quoting *Longinotti v. People*, 102 P. 165, 168 (1909)). Universal malice is demonstrated by acts that are calculated to put the lives of many persons in danger, without being directed against a particular person. *Id.* at 1233. Evidence that the defendant intended to take human life without provocation and without regard to who the victim might be demonstrates extreme indifference to the value of human life. *See e.g. People v. Fernandez*, 883 P.2d at 494; *People v. Zekany*, 833 P.2d 774, 776

(Colo. App. 1991) ("universal malice" established by evidence that defendant argued with victim, then shot a rifle toward a moving pickup truck containing the victim and three other people).

Having reviewed the entire trial court transcript, the Court finds the following: The evidence at trial, including Petitioner's own testimony, established that immediately after leaving a party at his girlfriend's house, Petitioner turned around and fired a loaded gun three times at the front doors, knowing that several adults, including his girlfriend's brothers, and some children were inside the front room. *See* Trial Court Transcript, Vol. 6; Vol. 7, at 42, 127-28. When Petitioner's attorney asked him if he was directing his fire at any particular individual, Petitioner responded "No, I wasn't." *Id.* at 128. The Court finds that the Colorado Court of Appeals' determination that Petitioner displayed the requisite universal malice and that he knowingly engaged in conduct creating a grave risk of death to others was not contrary to *Jackson,* or an unreasonable application of that decision. A rational jury could conclude from this evidence that Petitioner acted with the requisite universal malice. *Jackson*, 443 at 319. Further, the state appellate court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to federal habeas relief on his first claim.

## 2. Claim Two

For his second claim, Petitioner asserts that the trial court erroneously instructed the jury on the inapplicability of self-defense to the charged offenses other than attempted second degree murder, in violation of his rights under the Fifth, Sixth and Fourteenth Amendments. Petition, attachment at 3-4. Petitioner argued on direct appeal that the trial court's self-defense instructions deprived him of his due process right to a fair trial because

14

he was entitled to have the jury consider evidence of self-defense in determining whether

he was guilty of attempted extreme indifference murder, an offense which included an

element of aggravated recklessness.  Answer, Appendix C at 17.

The trial court gave the following self-defense instruction:

It is an affirmative defense to the crime of Attempted Second Degree Murder
that the defendant used physical force upon another person

(1)     in order to defend himself or a third person from what he
        reasonably believed to be the use or imminent use of unlawful
        physical force by the victim, and
(2)     he used a degree of force which he reasonably believed to be
        necessary for the purpose.

State Court File, Vol. I, at 180, Instruction No. 22.

The trial court further instructed the jury:

The affirmative defense of self defense is not a defense to: Criminal Attempt
to Commit First Degree Murder, Assault in the First Degree, Criminal Attempt
to Commit Reckless Manslaughter, or Assault in the Second Degree.
Therefore, the affirmative defense of self defense is only an affirmative
defense to criminal attempt to Commit Second Degree Murder.

*Id.* at 181, Instruction No. 23.

The Colorado Court of Appeals upheld the instructions under plain error review.

*People v. Ellis*, 30 P.3d at 779-80.   The appellate court initially determined that the jury

instructions were consistent with Colorado law of self-defense. *Id.*  at 779.  The court then

stated:

[T]he affirmative defense of self-defense is not consistent with attempted first
degree extreme indifference murder.  Consequently, any evidence reflective
of an apprehension of imminent danger was immaterial, and the trial court

was correct to refuse to instruct otherwise.[3]  See People v. Rodriguez, 888 P.3d 278.

The trial court also correctly refused to give a self-defense instruction as to the other offenses.  The use of deadly physical force may be justified only "if a person <u>reasonably</u> believes a lesser degree of force is inadequate." Section 18-1-704(2), C.R.S. 2000 (emphasis added). Defendant stated in his theory of the case instruction that he had the need to defend himself, but conceded that "he was <u>reckless</u> in his perception of the need for the force he used." (emphasis added).  As the People point out, reasonableness and recklessness are inconsistent standards; thus, the court was correct in ruling that a self-defense instruction was not available.

*Id.* at 779-80.

As an initial matter, this Court is bound by the state appellate court's determination that the trial court's instructions correctly stated Colorado law of self-defense.  *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  At the time of Petitioner's conviction, Colorado law held that self-defense evidence presented by the defendant may be considered by the jury in determining whether the defendant acted recklessly (where recklessness is an element of the charged offense), but the trial court was not required to submit a self-defense instruction to the jury.  *See People v. Fink*, 574 P.2d 81, 83 (Colo. 1978); *Case v. People*, 774 P.2d 866, 869-70 (Colo. 1989); *cf. People v. Roberts*, 983 P.2d 11, 14 (Colo. App. 1998) (stating that where the defendant presents evidence that he was acting in self-defense, the jury should be instructed to consider whether the defendant

---

[3]The Court notes that the Petitioner did not tender any self-defense instructions in addition to the twenty-four instructions given by the trial court.  (Answer at Appendix B; Trial Court Transcript, Vol. 7 at 135).  Petitioner makes no reference to a self-defense instruction that was tendered by the defense and refused.  Instead, he simply argued in the state court, and in his federal habeas petition, that the trial court's self-defense instructions were misleading. The state appellate court's reference to the trial court's rejection of "additional instructions of self-defense tendered by the defendant" appears to be a mistake. Answer, at 19 n.4; *People v. Ellis*, 30 P.3d at 779-80.

reasonably believed that use of deadly force was necessary, in determining whether the defendant committed the crimes charged).[4]  Petitioner's testimony at trial was that he was hit in the back of the head and heard a "bang" as he was pushed out the door of the party. (Trial Court Transcript, Vol. 7 at 127-28).

The state appellate court's plain error review is essentially the same as the federal due process inquiry and therefore, the AEDPA deferential standard of review applies. *See Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005).  Under Colorado law, plain error occurs when the appellate court, "after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to case serious doubt on the reliability of the judgment of conviction."  *People v. Ellis*, 30 P.3d at 779 (internal citation omitted).  Similarly, this Court may not set aside a conviction on the basis of erroneous jury instructions unless the errors "'so infected the entire trial that the resulting conviction violates due process.'"  *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also Thornburg*, 422 F.3d at 1126 (trial court's failure to give a jury instruction *sua sponte* is not subject to federal habeas review unless the omitted instruction resulted in a denial of fundamental fairness and due process) (internal citation omitted).  Further, asserted deficiencies in jury instructions "may not be judged in artificial isolation," but must be considered "in the context of the instructions as

_____

[4]The Court notes that the Colorado General Assembly amended the criminal statute concerning "defense of a person" in 2003 so that when defense of a person is raised as an element-negating defense, the trial court must define the defense and explain how it relates to the pertinent elements of the charged offense.  *See* C.R.S. § 18-1-704(4) (2003); *People v. Lara*, 224 P.3d 388, 393 (Colo. App. 2009) (explaining that prior to statutory amendment in 2003, the Colorado appellate courts deemed it unnecessary to define defense of a person or explain its relationship to the charged offense, citing *Fink* and *Case*).   The 2003 amendment to the defense of a person statute does not apply to Petitioner, who was convicted in 1998.

a whole and the trial record." *Estelle*, 502 U.S. at 72 (internal quotations and citations omitted).

The Court finds that Petitioner has not met his burden to show that the self-defense instructions rendered his trial constitutionally unfair. The jury was not prevented from evaluating Petitioner's evidence of self-defense in determining whether the *mens rea* element of the crime of first degree extreme indifference murder had been proven by the prosecution. The jurors were instructed only that they could not consider self-defense as an *affirmative defense* to those crimes, not that they could not consider self-defense evidence at all. An additional self-defense instruction may have been helpful but was not essential to the jury's consideration of the matter. *See Foster v. Ward*, 182 F.3d 1177, 1193-94 (10th Cir. 1999) (trial court's failure to give unrequested cautionary instruction on accomplice testimony did not render trial fundamentally unfair).

First, Petitioner stated in his theory of the case that he "was reckless in his perception of the need for the force used." State Court File, Vol. I at 156, Instruction No. 3. Although arguably supported by the trial record, this theory is inconsistent with self-defense as an affirmative defense. Multiple witnesses testified that Petitioner left the party angry, that neither of the victims named in the amended information (the two brothers of Petitioner's girlfriend) possessed a gun or other weapon, or had any physical contact with Petitioner as Petitioner left the house, and, that Petitioner fired three shots through the front doors after they were closed behind him. *See generally* Trial Court Transcript, Vol. 6; Vol. 7, at 42,127-28.

In addition, the jury convicted Petitioner of attempted extreme indifference murder which required the jury to find that Petitioner acted with aggravated recklessness. *See*

18

*generally People v. Jefferson,* 748 P.2d at 1231-32.   If the jurors believed Petitioner's testimony that he was acting in self-defense (i.e., that he used a degree of force which he reasonably believed to be necessary to defend himself), they could not have found that he acted recklessly.

The Court finds that the trial court's failure to give *sua sponte* an additional instruction on self-defense evidence did not mislead the jury so as to render Petitioner's trial fundamentally unfair, in violation of due process.   *Estelle*, 502 U.S. at 72.   Accordingly, the Court finds that the state appellate court's decision was not contrary to or an unreasonable application of federal law and Petitioner is not entitled to relief on his second claim.

### 3.  Claim Three

Petitioner asserts that his Fifth, Sixth and Fourteenth Amendment rights were violated when the jury found him guilty of one crime of violence count, but the trial court imposed crime of violence sentencing for both attempted first degree extreme indifference murder convictions.   Petition, attachment at 4.   Accordingly, Petitioner maintains that he is entitled to be resentenced.

Count four of the amended information charged that the Petitioner:

[d]uring the commission of the crime of Attempted First Degree Murder and lesser included offenses and the crime of Assault in the First Degree, and during the immediate flight therefrom, used, and possessed and threatened the use of a deadly weapon, to wit: Handgun[.]

State Court File, Vol. I at 139.

Under Colorado law, murder and criminal attempt to commit murder are crimes of violence.   *See* C.R.S. §§ 16-11-309(2)(a)(I), 16-11-309(2)(a)(II)(B), and 18-2-101(3.5)

(2000). Crime of violence sentencing for attempted first degree murder applies when the prosecution pleads and proves "use, or possession and threatened use, of a deadly weapon, or serious bodily injury or death, as to eligible crimes listed in §16-11-309(2)(a)(II), either as part of the underlying offense, or separately. *People v. Banks*, 9 P.3d 1125 (Colo. 2000); *see* C.R.S. §§ 16-11-309(2)(a)(I), 16-11-309(4), and 16-11-309(5) (2000).

The jury completed one verdict form finding that Petitioner "did use or possess and threaten the use of, a deadly weapon during the commission of the crime of criminal attempt first degree murder or criminal attempt second degree murder." State Court File, Vol. I at 190.

In resolving Petitioner's claim, the Colorado Court of Appeals determined:

When an information alleges sufficient facts to permit a defendant to prepare an adequate defense and to assure that he or she cannot be prosecuted again for the same crime, the information is sufficient even if it does not include a separate crime of violence count for each crime charged. *See People v. Pena*, 794 P.2d 1070 (Colo. App. 1990) (information charging defendant with three counts of aggravated robbery and a single count of crime of violence sufficient to support consecutive sentencing for all three crimes of violence even though information did not include a separate crime of violence count for each of the three victims), overruled on other grounds by *Robes v. People*, 811 P.2d 804 (Colo. 1991).

. . .

Defendant here did not challenge the sufficiency of the information until this appeal. Nor has defendant made a showing that the omission of an additional crime of violence count in the information prevented him from preparing an adequate defense or would subject him to further prosecution. *See People v. Pena*, *supra*. As the People note, defendant effectively waived any right to challenge the sufficiency of the language in the information.

Consequently, defendant is not entitled to re-sentencing on this basis.

*People v. Ellis*, 30 P.3d at 781.

Under federal law, a charging instrument is sufficient if it contains the elements of the offenses charged against the defendant, provides fair notice of the same, and enables the defendant to assert a double jeopardy defense if necessary. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Petitioner was charged with two counts of attempted first degree murder, arising from Petitioner's firing of three shots. Petitioner admitted to firing the gun. Trial Court Transcript, Vol. 7 at 127-28. The three shots were fired in quick sequence at the door. With the exception of the victims, the circumstances surrounding for all three shots were the same. Consequently count four of the amended information was sufficient to put Petitioner on notice that he would have to defend against a crime of violence sentencing enhancement on both attempted first degree murder charges. The Court finds that the state appellate court's decision was not contrary to, or an unreasonable application of, *Hamling*. Further, the appellate court's determination was not based on an unreasonable determination of the facts in light of the evidence presented.

This Court also considers whether Petitioner's due process rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000)[5], were violated. *Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The *fact* that Petitioner used a handgun during the commission of attempted first degree murder was proven to the jury beyond a reasonable doubt.

---

[5] *Apprendi* applies retroactively to Petitioner's Application because his direct appeal was pending when *Apprendi* was issued. *See Allen v. Reed*, 427 F.3d 767 (10th Cir. 2005).

Even if *Apprendi* was violated, failure to submit a sentencing factor to the jury is not structural error. *See Washington v. Recuenco*, 548 U.S. 212, 222 (2006). Thus, Petitioner must show, under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), that the asserted error "had substantial and injurious effect or influence in determining the jury's verdict." Put otherwise, the trial error must have resulted in "actual prejudice." *Id.* at 637 (internal citations and quotations omitted).

The state appellate court found that the omission of an additional crime of violence count in the amended information did not prejudice Petitioner's defense or subject him to future prosecution. This determination is consistent with the *Brecht* analysis. As discussed above, Petitioner admitted to firing the gun three times in rapid succession. Based on the uncontested evidence, there is no reasonable possibility that the jury would have found that Petitioner used a handgun to commit one count of attempted first degree murder, but did not use a handgun during the commission of the other count of attempted first degree murder. Accordingly, Petitioner has failed to demonstrate that he was actually prejudiced by any error in submitting the enhanced sentencing factor to the jury.

The Court finds that Petitioner is not entitled to habeas relief on his third claim.

## 4. Claim Four

In claim four, Petitioner asserts that his right to due process was violated because the prosecution and the trial court failed to preserve exculpatory evidence (i.e., the door containing the bullet holes) and to produce such evidence to the defense. Petition, attachment at 4-5.

The state trial transcripts reflect that defense counsel filed a pre-trial motion for a court order to obtain access to the door so that a defense expert could perform

measurements and a trajectory analysis of the bullet holes.  Trial Court Transcript, Vol. 2.

The trial court denied the motion, ruling that it had no jurisdiction to order a private party

to make evidence available to the defense, and suggested that the prosecution speak to

the residents of the house about allowing defense counsel access to the door.  *Id.*  At a

subsequent pretrial hearing, the prosecution advised the trial court that the residents of the

house refused to allow the defense access to the door.  Trial Court Transcript, Vol. 3 at 7-8.

 The trial court denied counsel's renewed request for a court order.  *Id.* at 8.  Petitioner

argued in his post-conviction appeal that the trajectory analysis his expert would have

performed if allowed access to the door was central to his mental state at the time of the

shooting.  Answer, Appendix J at 10-11.

The state appellate court did not address Petitioner's due process claim as an

independent claim.  Instead, the Colorado Court of Appeals resolved the issue in the

context of Petitioner's ineffective assistance of counsel claim.  The appellate court

determined:

> [D]efendant concedes that the door was examined by a prosecution witness,
> that photographs and measurements were taken to establish the locations
> of the three gunshots fired by defendant, and that defense counsel had
> access to such information and used it during cross-examination of the
> prosecution's witnesses.  Defendant also testified in his own behalf and
> admitted he fired the three shots knowing a number of people were in the
> house.
>
> We therefore agree with the People that defendant has failed to articulate
> how his expert's independent measurements and trajectory analysis of the
> door would have changed the outcome of the trial or have strengthened his
> claim of self-defense.  Hence, we reject his contention that his inability to
> examine the door affected the outcome of the trial and his related contention
> that his counsel was ineffective in not issuing a subpoena duces tecum or
> obtaining a search warrant for the door.

Answer, Appendix M at 4-5.

An accused's due process rights are violated when the prosecution suppresses material evidence that was favorable to the accused as exculpatory or impeachment evidence. *Brady v. Maryland*, 373 U.S. 83 (1963); *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (internal quotations and citation omitted). The materiality of suppressed evidence must be assessed in the context of the entire record. *United States v. Agurs*, 427 U.S. 97, 112 (1976).

It is an open issue in the United States Supreme Court whether the prosecutor "suppresses" evidence that is in the possession, custody and control of a private party, and is therefore equally accessible to the State and the accused. *Brady* holds only that "'the individual prosecutor has a duty to learn of any favorable evidence *known to the others acting on the government's behalf* in this case, including the police.'" *Strickler*, 527 U.S. at 280 (quoting *Kyles*, 514 U.S. at 437) (emphasis added). Regardless, the prosecutor's failure to procure evidence and make it available to the defense does not implicate the Constitution unless the evidence was material. *Kyles*, 514 U.S. at 433-34.

The Court has carefully reviewed the state court trial transcripts and finds that Petitioner's due process rights under *Brady* were not violated because there is no reasonable probability that the outcome of Petitioner's trial would have been different if Petitioner had been allowed access to the door for testing prior to trial. Petitioner testified that he shot a gun at the front doors of his girlfriend's house because he thought someone was trying to hurt him. There was substantial testimony that Petitioner fired the gun three times without provocation through the doors and into a room full of people. The outcome

24

of the trial turned on the jury's determination of the Petitioner's intent when he fired the gun—extreme indifference, self-defense, or recklessness. Petitioner has failed to articulate specifically how a defense expert's trajectory analysis of the door would have affected the jury's analysis of *mens rea*. Petitioner's conclusory assertions that additional testing was relevant to his mental state is not sufficient to show a reasonable probability that the jury would have found him not guilty of two counts first degree extreme indifference murder if such testing had been performed and presented by a defense expert at trial. *See Sandoval v. Ulibarri*, 548 F.3d 902, 915 (10th Cir. 2008); *Banks v. Reynolds,* 54 F.3d 1508, 1519 (10th Cir. 1995).

Petitioner belatedly asserts in his traverse that a defense expert's bullet hole and trajectory analysis of the door would have shown that one of the shots was fired from inside the house, rather than from the outside by Petitioner. Traverse at 8, 14. However, Petitioner offers no evidentiary basis for this statement other than his own testimony at trial that he heard a"bang" as he walked out the front doors. Indeed, there was no evidence presented at trial that anyone other than Petitioner was in possession of a gun at the time Petitioner left the party.

Accordingly, the Court finds that the state appellate court's determination, in the context of Petitioner's ineffective assistance of counsel claim, that Petitioner's inability to independently examine the door did not affect the outcome of the trial, was not contrary to, or an unreasonable application of the *Brady* materiality standard. The standards for materiality under *Brady* and for prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984) (discussing standard for analyzing ineffective assistance of counsel claim) are "virtually identical." *Snow v. Simmons*, 474 F.3d 693, 725 N.34 (10th Cir. 2007); *see also*

25

*Strickland*, 466 U.S. at 694. The Court further finds that the appellate court did not unreasonably determine the facts in light of the evidence presented. Petitioner is therefore not entitled to habeas relief on his fourth claim.

## 5. Claim Five

Next, Petitioner asserts in claim five that his convictions were based on a multiplicitous information, in violation of due process, because he was charged with two counts of attempted first degree extreme indifference murder, even though only one of the named victims was injured. Petitioner therefore maintains that the "substantial step" element was not met as to the second charge. Petition, attachment at 6. The essence of Petitioner's claim is that he received multiple sentences for a single offense, which implicates double jeopardy concerns.

In resolving this claim, the Colorado Court of Appeals stated:

A multiplicitous information refers to multiple counts covering the same criminal behavior. *See United States v. Johnson*, 130 F.3d 1420 (10th Cir.1997). The principal danger of multiplicity is that the defendant may receive multiple sentences for a single offense. See 4 W. Lafave, J. Israel, & N. King, Criminal Procedure 776 (1999).

*People v. Castro*, *supra*, 657 P.2d at 941, held that the substantial step required for a conviction of attempted extreme indifference murder is "conduct which poses a real and proximate risk of death to the victim."

Here, that defendant's bullets did not physically injure the second victim does not render defendant's act meaningless. Defendant's act of shooting through doors behind which he knew there were people posed a "real and proximate risk of death" to anyone who happened to be inside the house anywhere near the door.

We also note that the People's subsequent choice of persons to be named as victims in a crime of attempted extreme indifference murder has no significance as to whether defendant aimed his conduct "at a particular person" or at persons generally.

26

In light of *People v. Lee*, *supra*, we reject defendant's contention that his conviction was based on a multiplicitous information because he was convicted of attempted extreme indifference murder for shooting towards, but not injuring, the second victim. In *Lee*, a division of this court determined that a jury could properly determine that a defendant who shot at a vehicle was guilty of multiple counts of attempted extreme indifference murder as to two unwounded victims, who were in close proximity to two other wounded victims, one of whom died.

*People v. Ellis*, 30 P.3d at 783.

Under *Blockburger v. United States*, 292 U.S. 299, 302 (1932), "there can be but one penalty" when a statute criminalizes a course of action rather than an individual act. (internal quotation omitted). Where the state legislature intended to allow for multiple convictions for a single criminal incident, the *Blockburger* rule is not violated. *Burleson v. Saffle*, 292 F.3d 1253, 1256 (10th Cir. 2002) (habeas petitioner's conviction for two counts of violating the Oklahoma drive-by shooting statute, when there were two victims, did not subject him to double jeopardy). This Court is bound by the state appellate court's determination that the Colorado General Assembly intended that the attempted killing of multiple victims constitutes separate crimes. *Id.* at 1255 (citing *Missouri v. Hunter*, 459 U.S. 359, 366, 368 (1983) ("We are bound to accept the [State] court's construction of that State's statutes.")). The Court finds that the Colorado Court of Appeals' determination is not contrary to, or an unreasonable application of, *Blockburger.* Petitioner is therefore not entitled to habeas relief on his fifth claim.

**6**. **Claim Six**

In claim six, Petitioner asserts that the trial court's failure to declare a mistrial after one of the victims testified that Petitioner "may have shot a brother before" resulted in a fundamentally unfair trial, in violation of his due process right. Petition, attachment at 6.

At trial, victim Tyrone Guyton gave the following testimony about his intervention in an altercation between the Petitioner and Petitioner's girlfriend, who is Mr. Guyton's sister, which occurred at her house a few weeks prior to the date of the shooting:

Q.    What did you do?

A.    I told [Petitioner] it does concern me because I just brought a newborn child in and my fiancee was also pregnant again. So I told him he had to go. Okay. I wasn't going to bed.  I wasn't going to leave him alone, mind my business, until he left.

Q.    What was his response?

A.    Ain't nobody going to do anything to him.  He started walking out and he tells me, Ain't nobody going to do anything to him.  Nobody's going to hurt him. From that point I went back to bed once I realized he was out of the house.

Q.    What comment had you made concerning hurting him?

A.    I didn't make any comment concerning hurting him but I said that he may have shot a brother before –

Trial Court Transcript, Vol. 6 at 77-78.   At that point, defense counsel objected and asked the court to strike the last portion of the witness' answer.  *Id.* at 78.  The prosecution did not object, and the trial court so instructed the jury.  *Id.*  Defense counsel then moved for a mistrial outside the presence of the jury.  *Id.* at 80.  The trial court denied the motion, finding that its instruction to the jury to disregard objectionable statement was sufficient to cure any prejudice to the Petitioner.  *Id.* at 81.

In analyzing the Petitioner's claim, the state appellate court found:

During the direct examination by the prosecution, the uninjured victim stated that defendant "may have shot a brother before." Defense counsel promptly objected and asked that the testimony be stricken. The trial court agreed and also instructed the jury to disregard it. In camera, immediately thereafter, defense counsel moved for a mistrial, arguing that the order to disregard the statement would not cure the prejudice. The court denied the motion.

In so ruling, the court noted that the witness did not say defendant had, but only that he "may have" shot a brother. The court further found that the testimony surprised both the defense and the prosecution and that the curative instruction was an adequate remedy.

. . .

Here, absent evidence to the contrary, we presume that the jury followed the curative instruction and that the instruction cured any prejudice to defendant. *See People v. Lowe*, 969 P.2d 746 (Colo. App. 1998); *People v. Back*, 852 P.2d 1302 (Colo. App. 1992). Such a conclusion is especially warranted in light of the overwhelming evidence of defendant's guilt.

*People v. Ellis*, 30 P.3d at 777-78.

To prevail on his due process claim, Petitioner must establish that the witness's statement was "so unduly prejudicial that it rendered his trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1253 (10th Cir.1989) (stating that "[the] state courts' evidentiary and procedural rulings may not be questioned unless [the habeas petitioner] demonstrates that the remark by [a] witness . . . was so prejudicial in the context of the proceedings as a whole that he was deprived of the fundamental fairness essential to the concept of due process") (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974)). Moreover, the Court presumes "that a jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987) (internal quotation marks and citations omitted). Even if a constitutional error occurred, Petitioner must demonstrate that the error had a substantial and injurious effect or influence in determining the verdict. *See Brecht* , 507 U.S. at 623.

The Court finds that the trial court's failure to declare a mistrial was not an error of constitutional magnitude. The victim's statement that Petitioner "may have shot a brother before" was isolated, unsolicited and ambiguous. The trial court instructed the jury to disregard the witness' statement and Petitioner has not established an "overwhelming probability" that the jury was unable to follow that curative instruction." *See Greer*, 483 U.S. at 766 n. 8; *see also Patton v. Mullin*, 425 F.3d 788, 801 (10th Cir. 2005) (denying habeas relief for improperly admitted evidence in part because nothing in the record suggested the jury ignored the court's curative instruction). There is nothing to suggest that the jury did not adhere to the curative instruction nor that this stray comment combined with other evidence to deprive the Petitioner of a fair trial. Because the alleged error did not rise to the level of a constitutional violation, the Court need not conduct a *Brecht* analysis. Accordingly, the Court finds that the appellate court's analysis was not contrary to, or an unreasonable application of federal law, and did not constitute an unreasonable determination of the facts in light of the evidence presented. Petitioner is therefore not entitled to habeas relief on his sixth claim.

**7. Claim Seven**

Petitioner asserts in claim seven that the trial court's admission of other bad acts evidence rendered his trial fundamentally unfair. Petition, attachment at 6-7. The evidence consisted of the testimony of Petitioner's former girlfriend and her brother that a few weeks before the shooting, Petitioner choked her and had a gun, and that her brother asked him to leave. Trial Court Transcript, Vol. 6 at 30-35, 76-82.

The state appellate court analyzed the issue as follows:

We conclude that any error was harmless beyond a reasonable doubt.

30

The evidence in this case was overwhelming. Numerous persons witnessed the event, and there was no question that defendant fired three shots through the front door. In fact, when he testified, defendant admitted he had fired a gun and had fired three shots after an altercation with his girlfriend's brother. He claimed, however, that he was acting in self-defense because he thought his girlfriend's brother was shooting at him.

Thus, any error in admitting the evidence about defendant's earlier possession of a gun and his altercation with his girlfriend and her brothers was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967).

Answer, Appendix M at 5.

Where the state court applied the harmless-beyond-a-reasonable-doubt standard set forth in *Chapman*, 386 U.S. at 24, the federal habeas court "must decide whether the state court's finding of harmless error was contrary to or an unreasonable application of *Chapman*." *See Spears v. Mullin*, 343 F.3d 1215, 1232-33 n. 14 (10th Cir.2003). The evidence against Petitioner was substantial and amply supported the jury's verdicts, regardless of the other bad acts evidence. Petitioner's possession and use of a gun for the crimes charged was not contested. Thus, admission of testimony that Petitioner possessed a gun during an earlier incident involving the same persons could not have been prejudicial to the defense. Again, the only issue at trial was the Petitioner's intent in firing the gun multiple times. As discussed in Section IV.B.6 of this Opinion, the prior acts evidence did not weaken Petitioner's theory that he acted in self-defense on the day the charged crimes occurred, given the overwhelming evidence of Petitioner's guilt. The Court finds that the state appellate court's analysis of Petitioner's claim was not contrary to, or an unreasonable application of, *Chapman*. Accordingly, Petitioner is not entitled to habeas relief on his seventh claim.

**8. Claim Eight**

Petitioner asserts in claim eight that he was denied his Sixth Amendment right to effective assistance of trial counsel because counsel failed to: (a) issue a subpoena to secure material evidence (i.e., the door with bullet holes in it); and, (b) ensure that the trial court questioned all of the jurors about an incident of one juror's misconduct.

The state appellate court's analysis of Petitioner's claim that his trial counsel was constitutionally ineffective in failing to secure the door is set forth in its entirety in Section IV.B.4 of this Opinion. In short, the appellate court rejected the claim because "defendant has failed to articulate how his expert's independent measurements and trajectory analysis of the door would have changed the outcome of the trial or have strengthened his claim of self-defense." Answer, at Appendix M at 4-5. Therefore, trial counsel was not ineffective in failing to issue a subpoena for the door. *Id.*

With regard to Petitioner's claim that his trial counsel was ineffective in failing to ask the trial court to question all of the jurors about an incident of one juror's misconduct, the Colorado Court of Appeals determined the following:

> As to the issue regarding the questioning of the jurors, the record belies defendant's contention. It shows that the trial court questioned the juror who made the alleged statement and the juror who heard it. Both jurors confirmed the fact that the other jurors were not in the area and could not have overheard their conversation.
>
> Hence, there was no reason for the trial court to question the other jurors, and defense counsel was not ineffective in failing to request that the court do so.

Answer, Appendix M at 6.

To prevail on his claim that trial counsel's assistance was constitutionally ineffective, Petitioner must show that: (1) counsel's legal representation fell below an objective

standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted). Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Id.* at 693. In evaluating prejudice, the Court considers the totality of the evidence before the jury. *Id.* at 695. The Court need not address both prongs of the *Strickland* inquiry if it determines that Petitioner fails on one. *Id.* at 697.

The Court finds that the state appellate court's determination that Petitioner was not prejudiced by counsel's failure to secure access to the door so that a defense expert could perform an independent bullet hole and trajectory analysis was not contrary to, or an unreasonable application of, *Strickland*. As discussed in the context of Petitioner's *Brady* claim, Petitioner testified at trial that he shot three times through the door because he thought someone was trying to hurt him. Prosecution witnesses testified that Petitioner fired the gun three times without provocation through a door and into a room full of people. The outcome of the trial turned on the jury's determination of the Petitioner's intent when he fired the gun. Petitioner's conclusory assertion that a defense expert's trajectory analysis of the door would have affected the jury's determination that Petitioner acted with extreme indifference to the value of human life is insufficient to show prejudice. *See Sandoval*, 548 F.3d at 915; *Banks*, 54 F.3d at 1519. Similarly deficient is Petitioner's

unsupported, self-serving assertion in his traverse that further analysis of the door may have revealed  that one of the bullets was fired from inside the house.  Petition at 8-14.

The Court further finds that the state appellate court's resolution of Petitioner's claim that defense counsel was constitutionally ineffective in failing to ask the trial court to question all of the jurors was not contrary to, or an unreasonable application of, *Strickland.* The state trial transcripts reflect that there was no objective basis for defense counsel to request that the trial court question each and every juror about an incident which undisputably involved only two jurors.  Trial Court Transcript, Vol. 7 at 76-81.  Thus, Petitioner has failed to overcome the presumption that his counsel's performance was objectively reasonable.  *See Boyd*, 179 F.3d at 914.   Under the circumstances, the trial court's failure to question the other jurors could not have reasonably affected the outcome of Petitioner's trial.

For the reasons discussed above, Petitioner is not entitled to habeas relief on his eighth claim.

## 9.  Claim Nine

For his final claim, Petitioner contends that the sentence imposed by the trial court based on one of his convictions for attempted first degree extreme indifference murder violated his Fourteenth Amendment equal protection rights.    Petition, attachment at 8.  Petitioner was charged with, and convicted of, first degree attempted extreme indifference murder and first degree extreme indifference assault with respect to the same victim.   The trial court merged the first degree assault conviction into the attempted first degree murder conviction and sentenced Petitioner based on the latter.   Trial Court Transcript, Vol. 9.  Petitioner complains that his sentence based on the more serious crime violated equal

34

protection because there is no rational basis for distinguishing between the two offenses which were committed against the same individual.

In evaluating this claim, the Colorado Court of Appeals found:

Equal protection of the laws, as guaranteed by Colo. Const. art. II, § 25, is violated "if different statutes proscribe the same criminal conduct with disparate criminal sanctions." *People v. Castro*, 657 P.2d 932, 940 (Colo. 1983).

. . .

The [charges of attempted first degree extreme indifference murder and first degree extreme indifference assault] are similar. Nevertheless, we conclude that the difference between attempted first degree extreme indifference murder and assault in the first degree is not so lacking in objective content as to render the penalty differential for the offenses violative of equal protection. The supreme court has noted that the statutory definitions of attempted extreme indifference murder and of assault in the first degree are sufficiently different to justify the resulting penalty differential. *People v. Castro*, *supra*.

Concededly, in the present case, we are dealing with first degree extreme indifference assault, not merely "regular" assault in the first degree, as in *Castro*. We determine, however, that *Castro* 's reasoning still applies.

As in the court's analysis there, the crime of attempted extreme indifference murder requires an added and critical element: the actor's conduct must constitute a substantial step towards the completion of an extreme indifference murder, which, by definition, necessarily includes the causation of another's death. Thus, attempted extreme indifference murder requires conduct that poses a real and proximate risk of death to the victim. In contrast, the crime of extreme indifference assault does not require that the actor's conduct constitute a substantial step towards the causation of another's death; instead it requires an act that created a grave risk of death but merely caused serious bodily injury. *People v. Castro*, *supra*.

In sum, as noted by *Castro*, attempted extreme indifference murder's heightened risk of actual death to the victim constitutes the gravamen of that offense and distinguishes it from extreme indifference assault.

We conclude that the difference in the two offenses is sufficient to create a rational basis for distinguishing the first conviction from the second.

35

*People v. Ellis*, 30 P.3d at 782-83.

The state appellate court relied exclusively on the Colorado Constitution in resolving Petitioner's equal protection claim. However, because the state constitutional standard is at least as favorable to the Petitioner as the federal standard, the AEDPA deferential standard of review applies. *See Harris*, 411 F.3d at 1196.

The Fourteenth Amendment Equal Protection Clause is not offended by the prosecution and punishment of an accused for criminal conduct that violates more than one statute, but is punished differently under separate sections of a statutory scheme. *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979). Thus, the trial court's decision to merge the conviction for first degree assault into the conviction for attempted extreme indifference murder because both crimes involved the same victim, and to sentence Petitioner for the latter, did not violate Petitioner's Fourteenth Amendment equal protection rights.

Further, there is a rational basis for distinguishing between Petitioner's convictions for attempted first degree extreme indifference murder and attempted first degree assault, as found by the state appellate court in interpreting the elements of the two offenses. *See generally Schilb v. Kuebel*, 404 U.S. 357, 364 (1971) (statutory classifications violate Equal Protection only if no grounds can be conceived to justify them as rationally related to a legitimate state interest). Again, this Court is bound by the appellate court's interpretation of the Colorado Criminal Code on federal habeas review. *Hunter*, 459 U.S. at 368; *Burleson*, 292 F.3d at 1255.

Finally, challenges to a state court's sentencing decisions do not implicate the Constitution unless the sentence imposed is outside the statutory limits or unauthorized by law. *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Petitioner's sentence for

attempted first degree extreme indifference murder is within the statutory range of permissible punishment under C.R.S. §§ 18-1-105(1)(a)(V)(A), 18-1-105(9), and 16-11-309(1) (2000).

Accordingly, Petitioner is not entitled to federal habeas relief on his ninth claim.

For the reasons discussed above, Petitioner David Ellis' Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 3) is **DENIED**. It is FURTHER ORDERED that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right.

The Clerk of the Court shall close this case.

Dated this 6th day of July, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge